ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| MUNICIPIO AUTÓNOMO DE GUAYNABO<br><br>Peticionario<br><br><br>V.<br><br><br>VMF DESIGN GROUP, PSC.; XL SPECIALTY INSURANCE COMPANY; ASEGURADORA X<br><br>Recurridas | TA2026CE00777 | *Certiorari* procedente del Tribunal de Primera Instancia Sala Superior de Bayamón<br><br><br>Caso Núm.: BY2023CV04243 (505)<br><br><br>Sobre: Sentencia Declaratoria, Acción de Nulidad de Contrato y Restitución, Cobro de Dinero y Daños y Perjuicios |
| VMF DESIGN GROUP, PSC.<br><br>Recurrida<br><br><br>V.<br><br><br>MUNICIPIO AUTÓNOMO DE GUAYNABO<br><br>Peticionario | | Caso Núm.: BY2024CV06092 (701)<br><br><br>Sobre: Cobro de Dinero |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

Marrero Guerrero, Juez Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 18 de junio de 2026.

Comparece el Municipio Autónomo de Guaynabo (en adelante peticionario o Municipio) y solicita que revisemos una *Resolución* dictada el 28 de mayo de 2026, notificada al día siguiente, por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI).[1] En dicha determinación, el foro primario declaró *No Ha Lugar* la *Moción en Solicitud de Sentencia Sumaria Parcial* presentada el 2 de febrero de 2026 por el peticionario. Simultáneamente, el Municipio presentó

---

[1] Entrada 159 en el expediente electrónico (SUMAC) del TPI.

una *Urgente Moción en Auxilio de Jurisdicción,* mediante la cual solicitó la paralización de los procedimientos ante el TPI.

Se prescinde de la comparecencia de las recurridas, a tenor con la Regla 7 (B)(5) del Reglamento del Tribunal de Apelaciones, según enmendado, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, 215 DPR __ (2025).

Por los fundamentos que se exponen a continuación, se deniega la expedición del auto de *certiorari* y, de igual manera, se declara No Ha Lugar al auxilio de jurisdicción solicitado por el Municipio.

## I.

Este caso tuvo su origen el 2 de agosto de 2023, cuando el Municipio presentó una demanda en la que solicitó que se dictara una sentencia declaratoria de nulidad de siete contratos suscritos con VFM Design Group, PSC (VMF o recurrida) para que dicha entidad le proveyera servicios profesionales de diseño de planos, inspección, gerencia y consultoría en varios proyectos de construcción del ayuntamiento.[2] Ello, pues, según se alegó en la demanda, la Oficina de Auditoría Interna del Municipio concluyó que los mismos incumplieron con requisitos de ley aplicables a la contratación municipal.[3] En síntesis, se alegó que VMF incumplió con sus obligaciones contractuales al utilizar personal no licenciado como ingeniero para ejercer en Puerto Rico, por lo que solicitó que se ordenase la devolución al Municipio de los fondos públicos pagados a la recurrida, así como el resarcimiento por daños, pago de intereses sobre las cuantías a ser restituidas y una partida en concepto de honorarios de abogado.

Luego de varios incidentes que resulta innecesario pormenorizar aquí, el 2 de febrero de 2026, el Municipio presentó la

---

[2] Entrada Núm. 1 del expediente electrónico del TPI.
[3] Íd.

antes aludida *Moción en Solicitud de Sentencia Sumaria Parcial,* en la que, al amparo de propuestas de hechos y documentación en apoyo, solicitó que se dictase sentencia sumariamente en su favor. Por su parte, el 27 de febrero de 2026, VMF y su aseguradora, XL Specialty Insurance Co., presentaron su *Oposición a Moción de Sentencia Presentada por el Municipio Autónomo de Guaynabo.*[4] En la misma, tras admitir un número considerable de los hechos propuestos por el Municipio y objetar otros tantos, esgrimieron las razones por las cuales a su entender era improcedente la anulación de los contratos y, VMF no incurrió en incumplimiento contractual.

Así las cosas, luego de considerar las referidas comparecencias, así como una réplica y una dúplica, instadas respectivamente por cada una de las partes, mediante la *Resolución* objeto del recurso ante nuestra consideración el TPI rechazó la solicitud del Municipio. En la misma, el foro primario determinó la existencia de 101 hechos incontrovertidos; sin embargo, consignó la existencia de 32 hechos sobre los cuales apreció la existencia de controversia:

1. Si entre los meses de agosto de 2019 a diciembre de 2021, el Municipio otorgó siete (7) Contratos, con sus respectivas Enmiendas, con VMF, cuyo monto autorizado bajo los mismos sobrepasó un millón de dólares $1,000,000, para que esta última prestase al Municipio servicios profesionales y consultivos de ingeniería, incluyendo el diseño de planos, la inspección, la gerencia, la consultoría y la supervisión de varios proyectos de construcción.

2. Si los Contratos de consultoría, a saber:

   Eran órdenes de compra que el dueño determinaba había una... una evaluación de algo, un derrumbe, [ininteligible]. Y cuando digo "nosotros" la firma, verdad. Podía haber... había derrumbes, mejoras a las residencias. Hubo diseños de Guaynabo Medical Mall. Hubo diseños también del Guaynabo Medical Mall, un generador; de Obras Públicas. De todo. El proyecto tenía más de sesenta (60) proyectos.

3. Si como resultado de los asuntos atendidos durante el proceso de transición del Municipio, llevado a cabo entre febrero y marzo de 2022, la Oficina de Auditoría Interna del Municipio (en adelante, OAI) advino en conocimiento de la posibilidad de que se hubieran prestado servicios de ingeniería al Municipio por

---

[4] Entrada Núm. 145 del expediente electrónico del TPI.

parte de ingenieros cuyas licencias para ejercer dicha profesión no estaban vigentes, particularmente con relación a VMF.

4. Si la OIA llevó a cabo una evaluación de los contratos suscritos entre el Municipio y VMF.

5. Si el 18 de mayo de 2022, la OAI presentó el Informe de Auditoría OAI-22-E-02 (en adelante, el Informe de Auditoría) sobre la evaluación de los Contratos.

6. Si en el Informe de Auditoría, la OAI concluyó que VMF pudo haber incurrido en violaciones a la Ley 173-1988, conocida como la "Ley de la Junta Examinadora de Ingenieros, Arquitectos, Agrimensores y Arquitectos Paisajistas de Puerto Rico", sobre posible práctica ilegal de la ingeniería en los servicios contratados por el Municipio.

7. Si el primer hallazgo del Informe de Auditoría incluye que el Vicepresidente de VMF no estaba autorizado para ejercer la ingeniería en Puerto Rico.

8. Si el primer hallazgo del informe incluye, además, que, como parte de las propuestas sometidas para la formalización de los Contratos, se incluyó el resumé del señor Vélez Rosado, quien se presentaba como ingeniero civil licenciado núm. 24681, a pesar de que su licencia como ingeniero en entrenamiento estaba vencida.

9. Si el señor Vélez Rosado es la "cara" de VMF.

10. Si durante la vigencia de los Contratos, el señor Vélez Rosado era uno de los principales oficiales de VMF.

11. Si el señor Vélez Rosado reconoció que era el principal enlace de VMF con el Municipio.

12. Si en ocasiones, el señor Vélez Rosado se dirigía a los funcionarios del Municipio como el Ingeniero Vélez Rosado.

13. Si en varias minutas de reuniones, incluidas en las facturas que VMF proveyó al Municipio, aparece el Sr. Vélez Rosado como "Ing."

14. Si en varias facturas que VMF presentó al Municipio, aparece el Sr. Vélez Rosado como "Ing." en las certificaciones de los trabajos.

15. Si el señor Vélez Rosado hacía recomendaciones al Municipio.

16. Si el señor Vélez Rosado preparaba dibujos o "croquis" y los recomendaba al Municipio.

17. Si además, como parte del personal de VMF que prestó servicios al Municipio, se observó la representación del Sr. José Camilo Maldonado García (señor Maldonado García) en múltiples informes de inspección, minutas de reuniones y documentos de los proyectos.

18. Si el señor Maldonado García proveyó servicios al Municipio, como representante de VMF, al menos en los Contratos de Inspección 2020-00234 y 2022-000091.

19. Si el señor Maldonado García prestó servicios como Inspector de Proyecto en los referidos Contratos.

20. Si el señor Vélez Rosado, Vicepresidente de VMF al momento de prestarse los servicios, describió la labor a realizarse bajo los Contratos de Inspección de la siguiente manera:

[A]segurarse que los trabajos que se estaban haciendo eran según la orden de trabajo del Municipio en cuanto a cuantía, en cuanto al detalle de construcción, velaba...Él o cualquier observador. Voy a hablar de los deberes de los observadores, los inspectores.

Se evaluaban -no evaluaban- se aseguraban que se estuvieran incrementando las medidas de PRANCES, las de seguridad del proyecto.

[...]

Velaban porque la... por la seguridad del proyecto, tanto de los empleados de construcción, como del usuario. Como les dije, todos estos proyectos eran...se hacían en...caminos donde estaban en uso. También los observadores o los inspectores eran testigos de los... de las... de los depósitos de concreto o de asfalto y firmaban unos vouchers que se entregaban. Ayudaban a cuantificar las... los trabajos realizados manualmente. Hacían informes diarios, donde los informes detallaban la cantidad de obreros, la...la... los equipos que estaban utilizando y las tareas que se hacían por día, en las cuales incluían *otos* representativas de los trabajos. Si había alguna situación, inmediatamente nos llamaban a la oficina para identificar la situación para atenderla. Básicamente, a grandes rasgos. Se nos puede haber olvidado alguna, ¿verdad? Pero a grandes rasgos esa es la función de cualquier inspector en ese tipo de obra.

21. Si el Ing. Figueroa Borges no podía estar todo el tiempo en los proyectos.

22. Si el señor Maldonado García preparaba los informes de inspección que eran firmados y sellados por el Ing. Figueroa Borges.

23. Si como parte de los representantes de VMF que prestaron servicios bajo los Contratos de Inspección 2020-00234 y 2022-000091, en calidad de inspector, estuvo también el señor Orlando Cruz.

24. Si el señor Orlando Cruz no poseía licencia para ejercer la ingeniería en Puerto Rico mientras proveyó servicios bajo los Contratos de Inspección 2020-00234 y 2022-000091.

25. Si como parte de los representantes de VMF que prestaron servicios bajo los Contratos de Inspección 2020-00234 y 2022-000091, fue identificado, además, el señor Marcos Díaz.

26. Si el señor Marcos Díaz no poseía licencia para ejercer la ingeniería en Puerto Rico mientras proveyó servicios bajo los Contratos de Inspección 2020-00234 y 2022-000091.

27. Si como parte de los representantes de VMF que prestaron servicios bajo los Contratos de Consultoría en Ingeniería, 2020-000548 y 2020- 000092, se identificó a Marta Aponte.

28. Si la señora Marta Aponte llevó a cabo el rol de Arquitecta/Ingeniera bajo los Contratos de Consultoría en Ingeniería 2020-000548 y 2020-000092.

29. Si la señora Marta Aponte no poseía licencia para ejercer la ingeniería en Puerto Rico mientras prestó servicios bajo los Contratos de Consultoría en Ingeniería 2020-000548 y 2020-000092

30. Si como parte de los representantes de VMF que prestaron servicios bajo los Contratos de Consultoría en Ingeniería 2020-000548 y 2020-000092, se identificó a la señora Andrea García.

31. Si la señora Andrea García llevó a cabo el rol de Arquitecta/Ingeniera bajo los Contratos de Consultoría en Ingeniería 2020-000548 y 2020-000092.

32. Si la señora Andrea García es una Arquitecta en Entrenamiento.

Como fundamento para su determinación, el TPI razonó y concluyó lo siguiente:

Como se expresa en la discusión del Derecho, relacionado a la Sentencia Sumaria, cuando no existe una certeza sobre los hechos en controversia, no procede dictar Sentencia Sumaria. Luego de evaluar en su totalidad los escritos presentados, el Tribunal concluye que no debe utilizarse el mecanismo de Sentencia Sumaria para resolver parcial o totalmente este caso. El Tribunal está convencido que existen controversias genuinas sobre hechos materiales del caso. Por ejemplo, el tipo de funciones que realizaban varios empleados de VMF que no eran ingenieros para cumplir con los contratos de consultoría en ingeniería que dicha compañía contrató con el Municipio, y que son objeto de controversia en este caso.

En atención a lo resuelto por el TPI, y considerando que para el próximo 30 de junio está pautada la Conferencia con Antelación al Juicio, el 5 de junio de 2026 el Municipio presentó una *Moción Informativa En Solicitud de Conversión De la Conferencia con*

*Antelación al Juicio.*[5] La referida solicitud tuvo como base la intención del Municipio de presentar el recurso de *certiorari* que nos ocupa. Mediante Orden emitida el 8 de junio de 2026, el foro primario rechazó el curso de acción solicitado por el peticionario.

Tal y como había anticipado, el 17 de junio de 2026 el Municipio presentó su solicitud de *Certiorari.* En la misma, formuló el siguiente señalamiento de error:

> **ERRÓ EL TPI AL DENEGAR LA MOCIÓN EN SOLICITUD DE SENTENCIA SUMARIA PARCIAL PRESENTADA POR EL MUNICIPIO.**

En síntesis, el peticionario argumentó que el TPI incidió al denegar el remedio sumario, a pesar de haber determinado como hechos incontrovertidos suficientes hechos materiales para resolver la controversia ante sí. Esgrimió que las controversias identificadas por el foro primario se relacionan principalmente con la ejecución de los contratos y con las funciones específicas realizadas por algunos empleados de VMF y no con lo que el municipio identificó como el punto medular de su reclamo: la nulidad de los contratos por causa ilícita ante la oferta de servicios profesionales de ingeniería por personas no autorizadas a ejercer esta profesión en Puerto Rico y la operación de una corporación profesional por medio de personal no licenciado.

## II.

### -A-

El *certiorari* es un vehículo procesal extraordinario discrecional que permite que un tribunal de mayor jerarquía revise decisiones del foro inferior. *Rivera et al., v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *McNeill Healthcare v. Mun. Las Piedras I,* 206 DPR 391, 404 (2021); *IG Builders et al. v. BBVAPR,* 185 DPR 307, 337-338 (2012).

---

[5] Entrada 161 en el expediente electrónico (SUMAC) del TPI.

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1 limita de forma taxativa las instancias en que procede expedir el auto de *certiorari* en un asunto interlocutorio civil. *McNeill Healthcare v. Mun. Las Piedras I, supra*; *Scotiabank v. ZAF Corp., et al.*, 202 DPR 478 (2019). Así, solo es revisable un dictamen bajo las Reglas 56 y 57 de Procedimiento Civil, supra, o la denegación de mociones dispositivas. Por excepción, se pueden revisar asuntos sobre la admisibilidad de testigos de hechos o peritos esenciales, privilegios evidenciarios, rebeldía, relaciones de familia, interés público o situaciones que esperar a la apelación implicaría un fracaso irremediable de la justicia. Íd.

Si el asunto interlocutorio no se encuentra en tales instancias, el Tribunal carece de autoridad para intervenir, a fin de evitar dilaciones por la revisión de controversias que se pueden atender en una apelación. *Scotiabank v. ZAF Corp., et al., supra*, pág. 486.

Por su parte, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendado, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, 215 DPR __ (2025), rige los criterios que orientan la facultad discrecional de este Tribunal para atender una petición de *certiorari,* a saber:

A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Cuando se deniega la expedición del auto de certiorari, no es necesario exponer las razones de dicha determinación. *IG Builders et al. v. BBVAPR, supra*, pág. 336. En tal caso, este Tribunal no asume jurisdicción sobre el asunto ni lo resuelve en sus méritos. *McNeill Healthcare v. Mun. Las Piedras I, supra*, pág. 405.

**-B-**

La sentencia sumaria es un mecanismo procesal que permite disponer un caso ágilmente, sin la celebración de un juicio, siempre que no se presenten controversias genuinas de hechos materiales que requieran ser dilucidadas en un juicio plenario. *Coop. Seguros Múltiples de PR v. ELA*, 2025 TSPR 78, 216 DPR ___ (2025); *Birriel Colón v. Econo y otro*, 213 DPR 80, 90 (2023); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 334 (2021). Un hecho material es aquel esencial y pertinente que pueda afectar el resultado de la reclamación según el derecho sustantivo. *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010). Así, procede dictar sentencia sumaria cuando las alegaciones, deposiciones, contestaciones a interrogatorios, admisiones, declaraciones juradas, junto a cualquier otra evidencia, demuestran que no existe controversia real sustancial sobre los hechos esenciales. Regla 36.3(e) de Procedimiento Civil, supra, R. 36.3 (e); *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015); *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013).

La parte que se opone a la solicitud de sentencia sumaria debe refutar los hechos materiales que entienda están en disputa mediante evidencia sustancial. *Birriel Colón v. Supermercado Los Colobos, supra*; *SLG Fernández-Bernal v. RAD-MAN et al., supra*, págs. 336-337. Cuando la petición de sentencia sumaria está respaldada con declaraciones juradas u otra prueba, el oponente no puede descansar

en meras alegaciones, sino que debe responder con igual grado de especificidad y detalle. Regla 36.3 (c) de Procedimiento Civil, *supra*, R. 36.3 (c); *Birriel Colón v. Econo y otro, supra*; *Ramos Pérez v. Univisión, supra*, pág. 215. Empero, la falta de prueba para refutar la evidencia del promovente no implica la concesión automática de la sentencia sumaria. *Birriel Colón v. Supermercado Los Colobos*, supra; *SLG Fernández-Bernal v. RAD-MAN et al.*, *supra*, pág. 337.

El Tribunal Supremo estableció el estándar para este Foro apelativo revisar una sentencia sumaria. *Meléndez González et al. v. M. Cuebas, supra.* Primero, este Tribunal se encuentra en la misma posición que el Foro Primario al revisar *de novo* una solicitud de sentencia sumaria, conforme con la Regla 36 de Procedimiento Civil, *supra*, R. 36. En tal ejercicio, solamente se puede considerar evidencia presentada al Foro a quo, y se debe examinar el expediente de la forma más favorable a la parte opositora. Íd., pág. 116.

Segundo, corresponde verificar que tanto la petición de sentencia sumaria como su oposición cumplan con los requisitos codificados por la Regla 36 de Procedimiento Civil, *supra*, R. 36 y discutidos en el caso *SLG Zapata- Rivera v. J.F. Montalvo, supra.* Íd., pág. 119. Tercero, debe determinarse si en realidad existen hechos materiales en controversia. De ser así, es necesario distinguir entre los hechos controvertidos e incontrovertidos, según dispone la Regla 36.4 de Procedimiento Civil, *supra*, R. 36.4. Íd. Cuarto, si no existen hechos materiales en controversia, procede evaluar si el TPI aplicó correctamente el derecho. Íd.

### III.

Es norma reiterada que este Tribunal no intervendrá con el ejercicio de discreción del TPI, excepto en casos de craso abuso de discreción o que el tribunal haya actuado con prejuicio y parcialidad, o que se haya equivocado en la interpretación o aplicación de

cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esta etapa evitará un prejuicio sustancial.

Evaluada la petición de *certiorari*, así como el tracto procesal del caso ante TPI y la documentación que forma parte del expediente, a la luz del derecho aplicable, concluimos que el Municipio no logró establecer que el TPI hubiera incurrido en error alguno que justifique nuestra intervención en esta etapa de los procedimientos.  En cuanto a este último asunto, tampoco concurren los criterios establecidos en la Regla 40 de este Tribunal, según enmendada, *In re Aprob. Enmdas. Reglamento TA, supra*, para expedir el auto de *certiorari*.  Los hechos identificados por el TPI en su Resolución como controvertidos, tienen, contrario a lo expuesto por el peticionario, relevancia absoluta, es decir, son materiales, a la correcta adjudicación del caso ante su consideración y el resultado final perseguido por el Municipio no puede desvincularse, ni abstraerse, de su previa adjudicación por dicho foro.

**IV.**

Por los fundamentos que anteceden, se deniega la expedición del auto de *certiorari*. En atención al resultado alcanzado, de igual manera se declara No Ha Lugar la *Urgente Moción en Auxilio de Jurisdicción* presentada por el peticionario.

Notifíquese inmediatamente.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones